UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY ELIZABETH B.,

                              Plaintiff,

v.                                                                     3:18-CV-457(TWD)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON LAW OFFICE<br>For Plaintiff<br>PO Box 89<br>1500 East Main Street<br>Endicott, NY 13761 | PETER A. GORTON, ESQ. |
| HON. GRANT JAQUITH<br>United States Attorney<br>For Defendant<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | ANDREA L. LECHLEITNER, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **ORDER**

Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

those motions on May 14, 2019, during a telephone conference at which a court reporter was present. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in his appeal.

After due deliberation, and based up the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

ORDERED, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Acting Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: May 28, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARY-ELIZABETH B.,
                                            Plaintiff,

-v-                                         3:18-CV-457

BERRYHILL,

                                            Defendant.
-----------------------------------------------------------x
```

## TRANSCRIPT OF PROCEEDINGS
## BEFORE THE HONORABLE THERESE WILEY DANCKS

May 14, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY: **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **ANDREA L. LECHLEITNER, ESQ.**


*Hannah F. Cavanaugh, RPR, CSR, NYACR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (In chambers, counsel present by telephone.  Time
2   noted:  1:26 p.m.)
3           THE COURT:  I have before me a request for a judicial
4   review of an adverse determination by the Acting Commissioner
5   under 42 U.S.C. Section 405(g).  The background is as follows:
6   The plaintiff was born in June of 1982 and is currently 36 years
7   old.  She was 30 years old at the onset of her alleged
8   disability.  She has a Bachelor's degree and worked until
9   May 10, 2013, the date of disability, and was unable to return
10  to full-time work until January 15, 2017.  Her past jobs have
11  included front desk clerk, home attendant, and caseworker.
12          In her application for benefits, she indicated she
13  has bipolar disorder, depression, panic disorder, and
14  posttraumatic stress disorder.  Procedurally, for purposes of
15  this matter, the plaintiff filed for Title II benefits on
16  April 14, 2015.  As noted, she alleged an onset date of
17  disability beginning May 10, 2013.
18          A hearing was conducted by Administrative Law Judge
19  Kenneth Theurer on August 28, 2017, where plaintiff testified,
20  as did a vocational expert.  At the hearing, the plaintiff
21  requested a closed period of disability from May 10, 2013, to
22  January 15, 2017.
23          The ALJ issued a decision on October 17, 2017,
24  finding that plaintiff was not disabled during the relevant
25  time.  The Social Security Administration made that a final

1  determination of the agency by the Appeals Council's denial of

2  plaintiff's request for a review dated March 1, 2018.  This

3  District Court action followed.

4           The ALJ applied the required five-step sequential

5  test for determining disability.  At step one, he found

6  plaintiff had not engaged in substantial gainful activity during

7  the closed period from the alleged onset date through

8  January 15, 2017.

9           At step two, he concluded plaintiff suffers from the

10 severe conditions of anxiety and depression.

11          At step three, the ALJ concluded that plaintiff's

12 conditions do not meet or medically equal any of the listed

13 presumptively disabling conditions, considering several listings

14 in the mental health disorders category.  Then after a review of

15 the record evidence, the ALJ determined plaintiff is capable of

16 performing a full range of work at all exertional levels with

17 several additional nonexertional mental limitations.

18          At step four, the ALJ concluded plaintiff is unable

19 to perform any past relevant work.

20          And step five, the ALJ applied the Medical-Vocational

21 Guidelines, as well as obtained testimony from a vocational

22 expert and concluded that plaintiff was not disabled.

23          As relevant to the time period in question, the

24 plaintiff treated with her primary care provider, Family Nurse

25 Practitioner Amy Lord at the United Health Services Primary Care

```
 1  Newark Valley Clinic.  She also received treatment at the
 2  Outpatient Mental Health Clinic at Binghamton General Hospital
 3  and through the Psychological Clinic at Binghamton University by
 4  clinical therapist trainee Cailee Wiseman.
 5           I've reviewed the record carefully, and in light of
 6  the arguments of counsel and what counsel have presented in
 7  their briefs, I've applied the requisite deferential standard
 8  which requires me to determine whether correct legal principles
 9  were applied and whether the result is supported by substantial
10  evidence.  I'll turn first to the ALJ's determination of
11  plaintiff's residual functional capacity, or RFC.
12           Plaintiff argues that the ALJ improperly relied on
13  plaintiff's activities of daily living, or ADLs, and improperly
14  analyzed the opinion evidence.  Regarding the opinion evidence,
15  plaintiff argues the ALJ gave too much weight to the opinion of
16  Dr. Lieber-Diaz, a non-examining consultant, and not enough
17  weight to the opinions of Dr. Slowik, an examining consultant,
18  and treating mental health providers Wiseman and Dr. Geller.
19  Plaintiff also argues the ALJ did not properly assess
20  limitations regarding plaintiff's ability to maintain a viable
21  work pace and attendance.
22           I've done a thorough and searching review of the
23  record and find that the RFC is supported by substantial
24  evidence.  The ALJ thoroughly discussed the medical evidence and
25  other evidence of record, formulated the RFC based upon an
```

assessment of all of the medical and nonmedical evidence as a whole for the relevant time period, and thoroughly explained his analysis in arriving at the RFC.

The ALJ's decision shows he considered treatment records for the relevant period and noted plaintiff did not allege, nor did the record support, that she had any physical limitations such that she was capable of performing work at all exertional levels. As for her mental status, plaintiff was treated at Binghamton General Hospital's Outpatient Mental Health Clinic between December of 2013 and approximately March of 2015 when she cancelled an appointment and did not respond to outreach such that she was discharged against medical advice.

On admission, nevertheless, the mental status exam showed her to have a pleasant attitude, her behavior was appropriate, her speech was clear and normal, her thoughts were coherent, logical and reality-based, and she had fair concentration, cognitive functioning, insight, attention, and judgment. Her mood was noted to be depressed and anxious, but appropriate. She was also noted to be collecting unemployment in December of 2013.

On discharge in March of 2015, she was diagnosed as having moderate symptoms and moderate difficulty in social, occupational, or school functioning. Between April 2014 and February 2017, plaintiff treated with primary care provider -- mainly Nurse Practitioner Lord. While on several of the overall

1  office visits she complained of anxiety, depression, and
2  fatigue, nearly all of her mental status exams noted during the
3  encounters were normal with plaintiff having an appropriate
4  mood, affect, and behavior.  She was oriented in all three
5  spheres.  Her memory was charted as normal.
6       In the July and August visits in 2015, she was noted
7  to cry frequently and be depressed, but still her mental status
8  exams were normal.  In December 2016, she was noted as depressed
9  and sad, but she was also noted to be stable and her mental
10 status exam regarding her mood and affect was normal.
11      Plaintiff's treatment with clinical psychology
12 trainee Wiseman at Binghamton University Psychological Clinic
13 consisted of several individual counseling sessions during the
14 closed period.  She also had additional sessions beyond the
15 closed period and she apparently attended couples counseling
16 there with her husband.
17      While she was noted to have symptoms of major
18 depressive disorder and anxiety, the mental status exams in the
19 notes indicated she was well groomed, cooperative, oriented with
20 normal speech, intact thought processes, and normal thought
21 content.  Her mood was noted to be mildly depressed, but
22 euthymic.
23      In June 2016, her activities had increased at home
24 and she was co-leader of her daughter's Girl Scout troop and was
25 involved in the PTA at her daughter's school and she was going

to begin working from home for a book consultant. Her affect was neutral, calm, and appropriate.

A source statement from Wiseman covering the period of July 2015 to February 2017 noted plaintiff had medium limitations with concentration and persistence, interaction with others, and stress. Wiseman opined plaintiff would be off task between 15 and 20 percent during a normal workday and she would be absent 3 or more days per month.

In a letter dated August 7, 2017, signed by Wiseman and countersigned by Clinic Director Marilyn Geller, Ph.D., Wiseman stated that from July 7, '15, until mid-January 2017, quote, "I believe it would have been difficult for her to work on a consistent basis," based upon major depressive episodes and panic attacks during that time period.

The plaintiff was examined by consultant Dr. Slowik on July 6, 2015, just before she began seeing Dr. -- excuse me, Wiseman. Plaintiff reported symptoms of difficulty with sleep and appetite, a depressed mood, anxiety, panic attacks, and fear of being in public. However, her mental status exams revealed that she was cooperative and her social skills were adequate.

Her appearance, motor behavior, and eye contact were all normal. Her speech was fluent and clear and her expressive and receptive languages were adequate. Her thought processes were coherent and goal directed. Her affect was full and appropriate. Her sensorium was clear. Her attention and

1  concentration were intact.  Her cognitive functioning was
2  average and she had good insight and judgement.  However, she
3  was oriented in two of the three spheres.  Her memory was
4  moderately impaired and her mood was anxious and dysthymic.
5           Dr. Slowik opined plaintiff was not limited in
6  understanding simple instructions and directions, not limited in
7  performing simple tasks independently, not limited in
8  maintaining concentration and attention, not limited in learning
9  new tasks and not limited in making appropriate decisions.  Dr.
10 Slowik further opined that plaintiff was marked limited in
11 maintaining a regular schedule, in relating to others, and
12 appropriately dealing with stress.  Her ability to perform
13 complex tasks independently was moderately to markedly limited
14 according to Dr. Slowik.
15          The state agency's psychological consultant, Dr.
16 Lieber-Diaz, after a review the record evidence, determined
17 plaintiff was moderately limited in understanding and
18 remembering detailed instructions, but otherwise her
19 understanding and memory limitations were not significantly
20 limited.  Dr. Lieber-Diaz also noted plaintiff was moderately
21 limited in maintaining attention and concentration for extended
22 periods and in maintaining regular attendance and performing
23 activities within a schedule and in completing a normal workday
24 and workweek without psychological interruptions, but she was
25 otherwise not significantly limited regarding sustained

1  concentration and persistence.

2       As for social interaction, plaintiff was moderately
3  limited in interacting with the public, responding appropriately
4  to criticism, and getting along with coworkers.  She was not
5  significantly limited in other areas of social interaction.  In
6  adaptive limitation, she was moderately limited in responding
7  appropriately to changes in the work setting and in
8  realistically setting goals or making plans.  Dr. Lieber-Diaz
9  concluded that plaintiff would be able to do simple work on a
10 sustained basis within a setting that has limited interaction
11 with the general public.

12      Based upon the treatment during the relevant period
13 and the other nonmedical evidence of record, the ALJ found
14 plaintiff capable of work at all exertional levels and limited
15 her to simple tasks with simple instructions and directions,
16 simple stress and simple decisionmaking in a stable working
17 environment.  He found she could regularly attend to routine and
18 maintain a schedule.  He limited her to being able to interact
19 with others for simple tasks and instructions, but should avoid
20 complex interaction with joint efforts and only have incidental
21 contact with the public.

22      I find all of the treatment outlined above was
23 thoroughly reviewed by the ALJ and the records provide clear and
24 substantial evidence to support the RFC determination such that
25 meaningful judicial review is possible.  Only when the reviewing

court is unable to fathom the ALJ's rationale in relation to the evidence in the record would remand be appropriate for further findings or clearer explanation for the decision.  Thus, the relevant inquiry is whether the ALJ applied the correct legal standards and whether determination is supported by substantial evidence.  Here, I find the ALJ's analysis regarding plaintiff's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous.

Turning specifically to plaintiff's arguments that the ALJ did not properly weigh the opinion evidence, I find that argument unconvincing.  With regard to the ALJ giving great weight to Dr. Lieber-Diaz's opinion, I find the ALJ properly assessed the opinion and gave good reasons for crediting the limitations suggested therein.  The ALJ is entitled to rely on the programmatic expertise of Dr. Lieber-Diaz and her opinion is consistent with the plaintiff's mental status exams throughout the record to the date of Dr. Lieber-Diaz's opinion in July of 2015.

As noted above, the mental status exams at that time in the Wiseman notes indicate plaintiff was well groomed, cooperative, oriented with normal speech, intact thought processes, and normal thought content.  Her mood was noted to be mildly depressed but euthymic.  Her short-term memory was good.

1                 The mental exam by Dr. Slowik in July of 2015 was
2     normal except plaintiff was oriented in two spheres, her memory
3     was moderately impaired, and her mood was anxious and dysthymic.
4     Treatment records from Binghamton General Hospital's Outpatient
5     Clinic before July of 2015 showed plaintiff's mental status to
6     be normal except that she was depressed and anxious.
7                 While depression and anxiety were also noted in the
8     primary care provider's notes, plaintiff's mental status exams
9     by Nurse Practitioner Lord from April 2014 up through July 2015
10    showed normal mood and affect, appropriate behavior, normal
11    memory, and oriented in all three spheres.  Therefore, I find
12    Dr. Lieber-Diaz's opinion that plaintiff could regularly attend
13    to a routine and maintain a schedule in a low contact, low
14    stress environment is supported by substantial evidence in the
15    record and was properly explained.  The opinions of state agency
16    non-examining sources can be given great weight when supported
17    by medical evidence in the record and the RFC may not need --
18    excuse me, and the RFC need not track any one specific opinion
19    in the record.
20                Further, plaintiff's activities of daily living also
21    support the RFC.  During the relevant time period, she was
22    co-leader of her daughter's Girl Scout troop and had been
23    nominated to be treasurer of the PTA at her daughter's school.
24    She regularly visited her daughter's school once or twice a
25    week.  She was able to do some cooking, shopping, and cleaning.

1   She visited with family and friends and regularly spent time
2   with her mother, who, for part of the period of disability
3   claimed, lived 20 miles away from plaintiff.
4              I also find that the weight given to the opinion of
5   Dr. Slowik was supported by the evidence and properly explained.
6   The ALJ gave partial weight to her opinion, accepting the
7   portion of the opinion consistent with the record as a whole,
8   including other treatment notes, which I have outlined, and her
9   activities of daily living and which were consistent with her
10  findings on examination of the plaintiff.  The ALJ properly did
11  not accept the portion of her opinion that was not supported by
12  a record or Dr. Slowik's own examination of the plaintiff,
13  including the marked limitations Dr. Slowik found with regard to
14  plaintiff's ability to regularly maintain a schedule, in
15  relating to others, and in appropriately dealing with stress.
16             These restrictions were undermined by other treatment
17  notes in the record, as well, and Dr. Slowik's own mental status
18  exam where she noted plaintiff was cooperative and had adequate
19  social skills, she found plaintiff had normal appearance, motor
20  behavior, eye contact, and plaintiff's thought processes were
21  coherent and goal directed.  Plaintiff's affect was normal and
22  her attention and concentration were intact according to Dr.
23  Slowik.  She found plaintiff's cognitive functioning was average
24  and she had good insight and judgment.
25             I also find no error because although Dr. Slowik

opined marked limitations in some areas of functioning, such marked limitations do not preclude the ability to do work-related activities, especially because the ALJ limited plaintiff to simple work tasks with simple stress and incidental contact with the public and limited interaction with others and completing simple work-related tasks.

I also find no error in the ALJ giving only partial weight to the source statement of clinical psychology trainee Wiseman. First, Wiseman is not a proper medical source and the opinion in the check the box form dated August 7, 2017, is not countersigned by any other mental health professional. Second, Wiseman's opinions on plaintiff's limitations were inconsistent with her own mental status evaluations of plaintiff and lack support in other treatment notes included in the overall medical record and other nonmedical evidence during the relevant time period.

The ALJ also considered the narrative letter of Wiseman dated August 7, 2017, that was countersigned by Dr. Geller and properly rejected the opinions therein because the opinion that plaintiff could not work went to the ultimate determination of disability that is reserved to the Commissioner and because Dr. Geller never actually treated plaintiff. Further, Wiseman's statements that plaintiff would be off task and absent were inconsistent with Wiseman's own treatment notes and plaintiff's activities of daily living, as outlined already,

1  showing the plaintiff could do some household chores and
2  cooking, participate in activities with her daughter, and engage
3  in other recreational activities with her family.
4              Thus, I find the ALJ properly evaluated the opinion
5  evidence and gave good reasons for the weight given to each of
6  the opinions.  I find the ALJ properly explained the reasons for
7  the RFC.  In light of the foregoing, and considering the entire
8  record and the ALJ's determination, I find that the ALJ applied
9  the appropriate legal standards of review in determining
10 plaintiff's RFC and the RFC is supported by substantial
11 evidence.
12             Regarding plaintiff's step five argument, I find that
13 to be without merit since I have found the RFC to be supported
14 by substantial evidence and since the vocational expert's
15 testimony was based upon a hypothetical that was the same as the
16 RFC, the ALJ properly relied on the vocational expert's
17 testimony that plaintiff could perform jobs that exist in
18 significant numbers in the national economy.  The RFC, which I
19 have found properly supported and determined, simply does not
20 indicate that plaintiff would be off task 10 to 12 percent of
21 the workday or that she would miss more than one unscheduled
22 absence per month.  Therefore, the Commissioner met the burden
23 at step five and correctly determined plaintiff was not
24 disabled.
25             So I grant defendant's motion for judgement on the

1  pleadings and will enter a judgement dismissing plaintiff's
2  complaint in this action.  A copy of the transcript of my
3  decision will be attached to the order should any appeal be
4  taken from my determination.
5           (Time noted:  1:45 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| 1 | |
| 2 | CERTIFICATE OF OFFICIAL REPORTER |
| 3 | |
| 4 | |
| 5 | I, HANNAH F. CAVANAUGH, RPR, CSR, Official U.S. |
| 6 | Court Reporter, in and for the United States District Court for |
| 7 | the Northern District of New York, DO HEREBY CERTIFY that |
| 8 | pursuant to Section 753, Title 28, United States Code, that the |
| 9 | foregoing is a true and correct transcript of the |
| 10 | stenographically reported proceedings held in the above-entitled |
| 11 | matter and that the transcript page format is in conformance |
| 12 | with the regulations of the Judicial Conference of the United |
| 13 | States. |
| 14 | |
| 15 | Dated this 24th day of May, 2018. |
| 16 | |
| 17 | x *Hannah F. Cavanaugh* |
| 18 | HANNAH F. CAVANAUGH, RPR, CSR, NYACR |
| 19 | Official U.S. Court Reporter |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |